We'll now proceed to our second case, United States v. Mandell. Mr. Lipuma. May it please the court. Good morning. My name is Frank Lipuma and I represent Steven Mandell. FBI agent Tipton and the government provided then Chief Judge Holderman with an incomplete and misleading picture of their protections to create a Title III necessity where none existed. Through multiple layers of evidence, information, and documentation, Tipton knew there was only one other person involved and he either knew exactly who that person was or he chose to ignore the information in order to be able to claim that he did not know who that person was. Based on FBI surveillance, covert track records, telephone records, public records... Let me ask you a question, probably not really germane. I don't understand, why is more evidence required for an electronic search than for a, you know, old-fashioned search by people? Why isn't probable cause enough for any kind of search? Well Judge, I think when Title III was created, Congress implemented stringent requirements with respect to... Why? Why is it worse to have your phone tapped than to have a bunch of police barge into your house? Well Judge, they're both very intrusive, of course. Pardon? They're both very intrusive, of course, but I think... Why are they treated differently? That's what I don't understand. Judge, I guess we'd have to look at that. No, I'm just curious. What's the reason for it? Well, I think it's the privacy interest in the individual, Judge. I think it's that we're revealing, the government is capturing an individual's thoughts and words. Yes, and of course, when they go in and search a person's house and, you know, they find out a lot of private stuff. Well certainly, Judge, they'll grab contraband, they'll seize contraband, they'll seize drugs and guns and whatever else might be in there, and records, but they won't take the person's words. In this instance, they take the person's thoughts and words and actions. Everything is taped. The actions are taped, the words coming out of the individual's mouth, so I think perhaps Congress intended there to be a greater degree of privacy for the words that come out of a mouth, which are, you know, the person's innermost thoughts. So to the best I can answer that question, I think that that's the reason. It's something, it's a greater intrusion into a person's thought process rather than simply contraband found in a person's home. Okay, thanks. Thank you, Judge. All these records, all these layers of evidence, Your Honor, pointed to only one person, and that person was Gary Engel, and that was known to Agent Tipton and the FBI weeks in advance of Tipton submitting his affidavit. But there was more going on there, wasn't there? Because even though it seems obvious using hindsight, didn't Mandel also have substantial contacts with other criminals as well as other known criminals? He did, Judge. And so that brings us to George Michael, the informant in this case. George Michael's real estate office was completely wired by the FBI through video and audio means. He was recording conversations consensually in meetings and in telephone conferences, not just with Mandel, but with persons who are affiliated with the Grand Avenue Chicago Outfit street gang. And so he was having conversations as Michael was having conversations with Robert Pinozzo and Albert Vina, Michael Swiatek, and others. He was reporting all this information back to the FBI and the IRS, the same prosecutors who were on that case, were on Mandel's case. They were gathering the same amount of information. But Judge Williams, the important thing, I think, about that particular evidence is the government's evidence from George Michael, all those tape recordings, ruled out everybody else. They had daily debriefings from Steve Mandel's mouth, from Pinozzo's mouth, from Vina's mouth, hearing what was going on, what criminal activities were being planned. And none of those other people could be tied to Mandel with respect to the planning of the Quaranta and Campbell abductions, extortions, and murders. So that's the reason why. For instance, the government propped up Albert Vina in the district court. He's supposedly the boss of the Grand Avenue crew. And basically, Mandel clearly would not give the CI who his accomplice was. He did not provide that identity. We can see that. But that's besides the point. Because the tapes themselves ruled everybody else out. Because Mandel said, it's not the little guy, meaning Vina, because he's shorter in stance. Yeah, well, because Mandel was hiding Ingle's identity from George Michael, right? Correct, Judge. And so wasn't the wiretap really necessary to capture Mandel's conversations with Ingle? To prove him guilty at trial? I don't think so, Judge. Because first of all, the government had a vast amount of conversations that Mandel had on tape, so they could use that evidence against him. But the government wants to argue that, well, we needed evidence against Ingle as well. But that's really proved already, because through a typical Santiago proffer, Judge, this was a conspiracy case. These were charged conspiracy counts. Through a Santiago proffer and Federal Rule of Evidence 801 D2E, Mandel's statements about Ingle and Ingle's role, which was detailed as a psych ops guy, as the guy who was going to do the interrogation, that would be all admissible against Gary Ingle in court. It's done every day in this building, where co-defendants who are not even mentioned on a tape, or captured on a tape, are discussed on a tape. And that government had vast amount of information here. They wanted the court to ignore it. They didn't even want the court to provide it. And I think one of the clearest pictures of this, Judge, is 15 days before Tipton's affidavit, another agent, Troutman, is speaking with the account manager at Covertrack, basically said in an email, we are getting wiretaps on the subjects. Subjects, plural. And the only two people identified in the documentation that was provided by Covertrack, Mandel and Ingle. And they had a complete history of the tracking, which showed over 100 times that Ingle had tracked Mrs. Quarenta. They also had FBI surveillance. Let me just get back to the Covertrack things for one moment. Tipton provided all that Covertrack information to Judge Holderman about Mandel, and completely ignored that information as it related to Ingle. Even though he had that information in hand at the time, they totally eliminated that. They also eliminated any reference to the fact that Mandel met with Ingle on October 5, 2012, shortly before Tipton's affidavit was October 18th. And they saw Ingle going in the Crown Vic that they knew was going to be used to abduct Campbell. He inspected that vehicle, and he met with Mandel. Of course, that wasn't admitted at all as well. And so then we have the entire history. The government wants to say, well, you guys aren't considering the history that Mandel had with someone named O'Keeffe. Well, the fact of the matter is, the history Mandel had with O'Keeffe, which the government now thinks is important, they didn't think it was important when Ingle was being discussed, of course. But that didn't include the surveillance of Mandel meeting with O'Keeffe. It was Mandel meeting with Ingle. It didn't include any of the 200 plus telephone contacts between Mandel and Ingle. Why wouldn't it make more sense to punish the police or prosecutors or whoever violated his Fourth Amendment rights, rather than give him a new trial? His guilt is obvious. Well, Judge, the government thinks that evidence creates a standard of overwhelmingness, I shouldn't be entitled to this, but that's not the way the law reads. I mean, under Kyle's versus Wheatley- Does it make any sense? Well, Judge, I think it under- Does the law make any sense? You let a person like this have another trial just because maybe they shouldn't have, you know, gotten a permit to do electronic surveillance? Judge, the answer to that is absolutely. Absolutely. It doesn't matter who the person is. It doesn't matter who the defendant is. It's an absurd position, really. You let any kind of criminal go free if the government- this is a point Cardozo made many years ago. Criminals shall go free because the constable made a mistake. Because the constable blundered. That was Cardozo's attack on the exclusionary rule. It seems perfectly sensible to me. Well, Judge, I understand that position. However, this court itself has had cases where convictions have been reversed and vacated, where search warrant affidavits have proven to have material omissions or have fabricated representations in those. And those people are no different than Mr. Mandel. They've been found guilty beyond a reasonable doubt. The evidence in those cases in the court has indicated has been strong. The Macken case, the Harris case. So there really is no difference. It's a standard. That's all it is. It just doesn't make any sense as far as I'm concerned. Well, Judge, the Fourth Amendment- The Fourth Amendment. What does the Fourth Amendment say? Well, Judge, the Fourth Amendment bars unreasonable searches and seizures. And Congress has set up the Title III wiretap statute such that the Fourth Amendment is respected so that it's consistent. It doesn't say that someone gets acquitted because his Fourth Amendment rights are violated. That's not in the Fourth Amendment. But the Title III wiretap statute, Judge, says that evidence must be barred, that evidence must be suppressed. Where the agent does not give a full and complete statement of all the interceptees, where information is omitted, it must be barred and it must be suppressed. Thank you. Okay. Well, thank you very much, Mr. McClure. Mr. Fullerton. Good morning. May it please the Court. The District Court did not clearly err in refusing to hold a Franks hearing here. I think one thing that's important to emphasize that the District Court recognized is there were two crimes Mr. LaPuma was talking about, two crimes that- at least two crimes that happened in the fall of 2012. One was the extortion, kidnapping, and murder plot involving Stephen Campbell. It was the 1951 conspiracy and the 1201 conspiracy. Then there was the murder-for-hire plot involving Anthony Cuaranta. Those are two distinct crimes. And the Title III affidavit treated them as two distinct crimes, sought authorization only to intercept conversations relating to the Stephen Campbell plot, the murder, extortion, and kidnapping plot involving Mr. Campbell. The Tony Cuaranta plot was in the affidavit but was not a subject offense for which the government sought authority to intercept conversations. So going back to Mr. Engel's involvement in the- with Stephen Mandel in the fall of 2012, the things that Mr. LaPuma points to, namely his name being on the covert track account, his being seen with Mr. Mandel after a surveillance in October 2012, those have to do with the Tony Cuaranta plot, if anything. The tracking device was something that was put on Mr. Cuaranta's wife's automobile. The meeting that was seen between Mandel and Engel on October 5, 2012 followed a surveillance of Tony Cuaranta. These were not- this was not information that pertained to the Stephen Campbell plot. So at most one could say that Engel was a suspect in the Cuaranta plot, but there was no indication that Engel was the unidentified accomplice in the Stephen Campbell plot, which was, again, the subject offense for which the government sought authority to intercept. So the district court correctly found that the information about Engel's ties to the Cuaranta plot was immaterial to the affidavit seeking authorization with regards to the Campbell plot. One other thing, your brief mentioned several other criminals who could have been Mandel's confederate. Why didn't the affidavit list all or some of them as likely suspects to give the judge a fuller picture? The other ones, the other individuals, Ponozo and O'Keefe, were also- they had- Ponozo, for example, had volunteered to help Mandel in the Cuaranta plot. O'Keefe's automobile was used in the surveillance of Tony Cuaranta. There was no indication that Ponozo or O'Keefe or anybody else by name was involved in the Stephen Campbell plot. So for that reason they were omitted from the affidavit. You know, for the same reason that Engel was not in the affidavit. This was a different subject offense and they were tied, if at all, just tangentially to the Cuaranta plot. Even had that information, of course, been put in the affidavit, it would not have defeated- Where did Engel die of- I believe he committed suicide, your honor. Oh, that's right. Even if all that information about Ponozo, O'Keefe, and Engel had been put in the affidavit regarding their involvement, potential offers to help with Tony Cue, the Tony Cue murder, had that information been put in the affidavit, it would not have defeated necessity with regard to the Campbell plot. And can you just speak to the IRS reports that were turned over and the timing of them? They were turned over after trial- The full reports had been turned over after trial, after Mandel had filed a pro se motion regarding the gun and so on. And in his pro se motion, Mandel had attempted to link the gun to James Marcello, who was a Chicago outfit figure. He did so, I think, because the original owner of the gun, Individual A, in our brief, her name was Marcello. It was spelled differently, but he claimed to link to the two. So in trying to meet our discovery obligations and to be completely forthcoming, the government turned over those two IRS reports that showed that, indeed, Individual A was not linked to James Marcello. Of course, that led to other litigation involving the gun, but the district court correctly found that the information in those IRS reports about Individual A having purchased the gun some decades ago was not at all impeaching of the government's case. It wasn't impeaching of George Michael. It certainly wasn't exculpatory as to Stephen Mandel and the charges in this case, including the two gun counts in the indictment. After all, Mandel had been videotaped at Club Med, the 5308 Devon location, discussing the firearm with Gary Engle, commenting on how difficult it was to load the gun while wearing gloves. The evidence of Mandel's guilt on those two gun counts, as well as every other count in the indictment, certainly the Gary Engle count, or the Stephen Campbell counts, was truly overwhelming. So the district court did not err in declining to grant him a new trial on the basis of the IRS reports. I really don't have any other comments to make, Your Honor, unless the court has questions. The district court correctly declined to hold a Franks hearing. None of that information that was claimed to be omitted from the affidavit was material to the probable cause determination to grant the authority to intercept. And the IRS reports, the newly disclosed information after trial, was not impeaching, was not exculpatory, and certainly would not have made any difference in the outcome of the case. Okay, well thank you, Mr. Fleming. Thank you. Mr. McMillan? I just would like to make a quick point about the subject offenses being separate, as the government's urging the court to adopt here. And I would refer the court to the affidavit itself. I mean, there's detailed allegations about the Stephen Campbell plot and the Coranta plot, but basically they involve the same modus operandi, which is a kidnapping, an extortion, and a murder. And importantly, Judge, the government wants to draw a distinction, but there isn't one, because both of those victims were supposed to have been taken to Club Med on Devon Avenue. That's what the CI, Michael, told Agent Tipton. It's reduced to a report, and then even in Tipton's affidavit to Judge Holderman, he writes the victims plural, including Stephen Campbell, will be taken to Club Med. And we've identified the bait stamp in the citation in our brief. Judge, there were blended allegations here between the Coranta and Campbell matters. These allegations all were presented by the government to support the finding of probable cause. And of course, Chief Judge Holderman did not just read the paragraphs in the affidavit that dealt with Stephen Campbell. He read the entire affidavit. And nearly half of the allegations of murder, extortion and murder, there was absolutely no conceptual separation between these subject offenses at all. And the only other point I would ask to make is Mr. Fullerton, I believe, misstated when he said the full reports were provided to the defense after trial. In fact, we only received the redacted reports of the IRS memorandums, and to this day, we've never seen the full reports. Judge, based on all of our arguments today, as well as in our brief and reply brief, we request the court to vacate the convictions, vacate the judgment entered against Mr. Mandel, remand to the district court for a new trial and for Frank's hearing. Okay, thank you, Mr. Leverett. When you were appointed, we thank you for your efforts on behalf of the court. Thank you, Judge. Thank you, Mr. Fullerton, as well.